UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CALVIN B. JEFFERSON, SR.                          CIVIL ACTION

VERSUS                                            NO. 13-0328

RODNEY J. STRAIN, JR., GREGORY                    SECTION "H"(4)
LONGINO, KELLY UNBEHAGEN, TRAVIS
TRAHAN, STEVE VANDENBROEK

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On April 9, 2013, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for the defendants participating by conference telephone call.[2] Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

---

[1]766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges occurred and the legal basis the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2]Rec. Doc. No. 13. The plaintiff was sworn prior to testifying. The hearing was digitally recorded.

# I.     Factual Background

## A.     The Complaint

The petitioner, Calvin B. Jefferson, Sr. ("Jefferson"), was a pretrial detainee incarcerated in the St. Tammany Parish Jail when he filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983.  Jefferson named the defendants, St. Tammany Parish Sheriff Rodney J. Strain, Jr., Warden Gregory Longino, Lieutenant Kelly Unbehagen, Deputy Travis Trahan, and Deputy Steve Vandenbroek, complaining about the use of excessive force and that he was improperly housed with a Louisiana Department of Corrections ("DOC") inmate.

Based on the complaint and attachments thereto, on November 18, 2012, Jefferson was involved in an altercation with another inmate, Harold Allen.  He alleges that Deputy Vandenbroek failed to report the true facts of the incident.  He also alleges that Lieutenant Unbehagen should be held accountable for spraying him with mace during the incident, while at the same time he was shot with a taser by Deputy Trahan.

Jefferson contends that he submitted a grievance complaint to prison officials complaining of the use of excessive force, to which Lieutenant Unbehagen responded and denied the allegations. After receiving no response to his appeal to Warden Longino, Jefferson indicates that he fled suit to recover for the excessive force used by Lieutenant Unbehagen and Deputy Trahan.  He also seeks to have Warden Longino held accountable as the superior officer and for failing to respond to the grievance appeal.  He also alleges that Sheriff Strain as the superior officer failed to train the deputies on subduing an inmate during a fight.

As relief, Jefferson requests review of his claims and $1 million as compensation for pain and suffering resulting from the altercation and lack of professionalism of the deputies and nursing staff at the jail.

**B.     The *Spears* Hearing**

Jefferson testified that he was a pretrial detainee awaiting trial on a charge of second degree murder.  He further testified that, on November 18, 2012, he was involved in a fight with a DOC inmate, Harold Allen.  He stated that the disagreement started the night before when prison officials conducted a "shakedown" of Allen's cell and found a "smoking leaf" and razor.  Allen implied that Jefferson had told the officers that he had the items in his cell and an argument started.  Jefferson stated that Allen began playing "sexual games," so he told Allen he was not interested and that he was not his roommate.  Jefferson recalled that, later that night, Allen told him to be ready for a fight in the morning when the cell doors opened.

Jefferson stated that he readied himself for a fight in the morning by putting on tennis shoes for balance and staying in his cell for a while.  He finally went out to eat his breakfast and Allen came up behind him near the telephone.  Jefferson claimed that Allen asked him what he wanted to do about their argument.  Jefferson recalled that Allen had a shank the night before, so he got up and moved to a place near the stairwell where he felt he could defend himself.  At that time, Deputy Vandenbroek was the pod officer and could be seen standing in the window overlooking the area near where Allen was standing.

Jefferson stated that he and Allen continued to argue and each one called for the other to come to him.  Jefferson claimed that he finally decided that it was not worth the trouble, and he returned to eat his breakfast at the table next to where Allen was still standing.

3

Jefferson claimed that, as he started to eat his breakfast, Allen continued to argue with him. He claims that he tried to get the attention of the pod guards when Allen attacked him by hitting him in the jaw.  Jefferson stated that he grabbed Allen and they fought.  He said that Allen initially was holding him and when he got his arms free, he ended up on top of Allen on the table.  They eventually fell to the floor and Allen bit him on the ear.  Allen recalled that another inmate tried to break up the fight.  When he and Allen stood up, he heard the door open and saw the deputies coming towards them.  He claimed that Allen punched him again, and when he turned to defend himself, he was tasered by the guards.

Jefferson eventually conceded that Lieutenant Unbehagen sprayed cold mace that hit the back of his neck while he was still fighting.  He then was struck by the taser and fell to the floor. He claimed that Lieutenant Unbehagen then knelt down and sprayed him again with mace while the other officers handcuffed him.

Jefferson complained that the officers maced him and tasered him at the same time while he was defending himself and before he could separate himself from Allen.  He stated that he was not resisting them since they did not give him a chance to stop fighting before he was tasered.

He was escorted down to the sallie-port to wash the mace from his eyes and then was taken to the nurses' station.  While there, he told the nurse that Allen had bitten him on the right ear.  She examined his ear and found nothing wrong and nothing to treat.  The nurse removed the taser pins and the deputies took him back to the dorm.

Jefferson complained that, later that night, he suffered with pain in his neck and lower back from the fight.  That same night, he was given an antibiotic ointment to put on the taser wounds. He told the nurse about his back and neck pain and was told to complete a sick call slip.  He turned

in a slip and was seen in the medical unit about two days later.  He was given ibuprofen for two or three days which helped resolve the back and neck discomfort.

At first, Jefferson claimed that he wrote out a second sick call request about four days later about the bite on his ear.  Later, he testified the night after the fight, he saw Nurse Scarlet.  He showed her the bite on his ear and told her that he wanted to be tested.  He claims that she told him that he should be given an oral antibiotic.  She took his sick call slip and gave him the antibiotics starting the next night.  Jefferson stated that the bite must have broken the skin because a scab appeared while it was healing.

Jefferson also stated that he also filed a grievance complaint about the first nurse's refusal to treat his ear and that he disagreed with the nurse's assessment of his ear injury.  He saw Dr. France about his complaint against the nurse.  Jefferson claimed that Dr. France argued with him and told him that he had no right to question the medical staff.  Jefferson recalled telling Dr. France that he received his degree as a medical assistant and knew that he needed to be tested to see if Allen had passed on a disease to him.  He claimed that the doctor had him sent me back to his dorm and no tests were done on his ear.  After that, the medical issue over his ear blew out of proportion and he filed another complaint against Dr. France.  He stated that he was concerned that Allen had given him a disease and the medical staff refused to test him or Allen.

Jefferson conceded that he never told any of the guards on the tier that he and Allen argued or that Allen threatened to fight with him.  Instead, he prepared himself in case the fight happened by wearing tennis shoes and staying in his cell until the other inmates had finished breakfast.

Jefferson stated that he named Sheriff Strain as a defendant because he was the superior responsible for the actions of his deputies.  He also alleged that the Sheriff should have trained the deputies on the appropriate way to subdue an inmate during a fight.

Jefferson also indicated that he sued Warden Longino because the Warden did not answer his grievance complaint filed against the deputies for the use of excessive force and for housing him with a DOC inmate.  Jefferson explained that he filed a grievance complaint about the incident and he was denied relief based on the report issued by Deputy Vandenbroek.  When he sought review of that denial, Warden Longino responded that there was no grievance on file.  Jefferson stated that he wrote a letter to the Warden explaining what he had filed, and he never heard back from the Warden.

He also sued Lieutenant Unbehagen because she sprayed him with mace.  He also sued Deputy Trahan because he shot the taser without warning.   Jefferson also named Deputy Vanderbroek as a defendant because he disagrees with the report the deputy issued about the fight.

Jefferson indicated that he was also upset because he was placed on lockdown and had to appear before a disciplinary board.  He stated that the deputies told him during the hearing that he was supposed to be warned with mace before the taser was used, although the video showed he was hit with both at the same time.  Jefferson conceded that he was not charged with anything but he was on lockdown in his cell for about three of four days before the hearing.

In addition, Jefferson conceded that Allen was also in lockdown in his cell at the same time.  Several days later, on the Sunday after the incident, he learned that Allen was shipped out to another facility after Deputy Vanderbroek revised his report to indicate that Allen, not Jefferson, was the aggressor.  Jefferson was told that Allen became mad and was transferred to the other prison.

6

Jefferson stated that he knew the situation had been rectified before he filed this suit. However, he stated that he was already "emotional" about the deputies' use of the spray and taser at the same time.  As relief, he requested that the Court review his case and compensate him for his pain and suffering and for the fear he endured when the medical staff failed to test him for diseases.

## II.  <u>Standard of Review for Frivolousness</u>

Titles 28 U.S.C. §§ 1915A and 42 U.S.C. §§ 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).  However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.  *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999).  It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations.  *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269-70 (5th Cir. 1992).

### III.  Analysis

Title 42 U.S.C. § 1983 provides a federal cause of action against any person, who, acting under color of state law, deprives another of his constitutional rights.  *See Will v. Mich. Dep't of St. Police*, 491 U.S. 58, 66, 68 (1989).  A plaintiff must identify both the constitutional violation and the responsible person acting under color of state law.  *See Flagg Bros.*, *Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *see generally Polk County v. Dodson*, 454 U.S. 312 (1981).

Pretrial detainees, like Jefferson, are protected by the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's cruel and unusual punishment standards.  *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)); *Zara v. Strain*, 458 F. App'x 393, 393-94 (5th Cir. 2012).  The distinction is primarily one of formality, however, because to determine whether a pretrial detainee's rights have been violated under the Fourteenth Amendment, the court applies an analysis identical to that applied in Eighth Amendment cases.  *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996).

The plaintiff, therefore, must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his welfare or safety.  *See Neals v. Norwood,* 59 F.3d 530, 533 (5th Cir. 1995).  An official is deliberately indifferent to an inmate's health and safety "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999).  The United States Fifth Circuit has explained that "[d]eliberate indifference is a conscious choice to endanger constitutional rights." (quotations omitted)  *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008) (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998)).   Furthermore,

"[d]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001). Instead, "the officer must have the subjective intent to cause harm." *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003). Applying these standards, Jefferson has not alleged a violation of a constitutional right that would entitle him to redress under § 1983.[3]

### A.    Claims Against Sheriff Rodney J. Strain, Jr.

Jefferson indicated that he named Sheriff Strain as a defendant because of his role as a superior officer over the deputies involved. A supervisory official, like Sheriff Strain, cannot be held liable under § 1983 pursuant to any theory of *respondeat superior* simply because an employee or subordinate at the prison allegedly violated the plaintiff's constitutional rights. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979).

Instead, the Sheriff may only be liable under § 1983 if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998) (citing *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976)); *see also Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120 (5th Cir. 1980). This personal involvement also must include a showing of deliberate indifference as discussed

---

[3]A significant portion of Jefferson's statements at the *Spears* Hearing related to his disagreement with the treatment he received from the nurse and Dr. France related to his alleged ear injury or bite by Allen. He has not named the nurse or Dr. France in this petition and has made no claims of inadequate medical care against the named defendants. To the extent he may have intended to do so, his disagreement with the course of treatment or the diagnosis reached by the medical personnel is not sufficient to state a claim under § 1983. *Burton v. Owens*, No. 12-60358, 2013 WL 586825, at *3 (5th Cir. Feb. 14, 2013) (citing *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) and *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) ("Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs.")).

above.  *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Jefferson does not allege that Sheriff Strain was present for, or personally involved in, the events occurring on November 18, 2012, or the disciplinary and grievance proceedings or medical care that followed.  Instead, Jefferson has named Sheriff Strain solely in his role as Sheriff and supervisory official over the named defendants.  This is not a sufficient basis to impose liability under § 1983 against Sheriff Strain.

Under a broad interpretation, Jefferson also alleges that Sheriff Strain had an obligation to properly train the deputies on how to subdue an inmate during a fight.  A supervising officer not personally involved in the acts that deprived the plaintiff of his constitutional rights may be liable under § 1983 if it is proven that: (1) the supervising officer failed to train or supervise the subordinate officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's constitutional rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. *Thompson*, 245 F.3d at 459 (citations omitted).  Allegation and proof of a single instance, rather than a pattern of similar violations, normally will not sustain a plaintiff's claim that a lack of training or supervision caused a violation of his constitutional rights.  *Id*. (citing *Snyder*, 142 F.3d at 798-99; *Thompkins v. Belt*, 828 F.2d 298, 304-05 (5th Cir. 1987)).  Finally, the inadequacy of the training "must be obvious and obviously likely to result in a constitutional violation."  *Id*. (citing *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)).

Jefferson testified at the *Spears* Hearing that the prison policy did not allow for him to be maced and tasered at the same time and the deputies should have been trained to know that.  He

indicated, however, that the proper methods and policy on the use of mace and tasers was confirmed for him by the deputies at the disciplinary hearing.  Jefferson also conceded to the Court that he continued to fight with Allen even after he felt the spray of mace on his neck.  When he did not promptly respond, the taser was quickly fired.

Assuming the deputies were overly zealous in the use of mace and the taser, Jefferson has not alleged that Sheriff Strain is the prison official charged with the duty to train the subordinate officers involved in this case on the proper use of mace and tasers to end an inmate fight.  He has not pointed to any fact to show any such connectivity between the deputies's alleged error and a policy or directive of or failure to train by Sheriff Strain himself.  It simply is not enough that the Sheriff is named in his role as a supervisory official at the prison.

Thus, Jefferson's claims against Sheriff Strain are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e.

### B.    Claims Against Warden Gregory Longino

Jefferson has named Warden Longino as a defendant because he did not respond to Jefferson's grievance appeal in connection with his complaint against the deputies for excessive force and improper housing.  Jefferson has failed to state a cognizable § 1983 claim.

An inmate has no constitutional right under the First or Fourteenth Amendments to an effective grievance procedure or to have his complaints resolved to his satisfaction.  *See Propes v. Mays*, 169 F. App'x 183, 184-85 (5th Cir. 2006); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005).  The United States Supreme Court has made clear that the quality of a jail's grievance procedures is immaterial, and such procedures "need not meet federal standards, nor must they be

plain, speedy, and effective." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (quotation marks omitted); *see also Alexander v. Tippah County, Miss.*, 351 F.3d 626, 630 (5th Cir. 2003) ("[I]t is not for the courts to inquire whether administrative procedures satisfy minimum acceptable standards of fairness and effectiveness.").

In other words, there is no constitutional guarantee that the inmate will be satisfied with the responses given to his grievance complaints by the prison officials.   Jefferson was not constitutionally entitled to an answer to his complaint from Warden Longino or any other official involved in the grievance process.

Jefferson has failed to state a non-frivolous claim under § 1983 against Warden Longino arising from the failure to respond to his grievance complaint.  The claims against him also must be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A, and 42 U.S.C. § 1997e.

### C.      Claims of Failure to Protect

Jefferson alleges that the tier guards, specifically Deputy Vandenbroek, failed to protect him from Allen, the inmate with whom he fought.  This claim is also frivolous.

Prison officials have a duty to protect inmates from violence by other inmates and to take reasonable measures to protect their safety.  *Farmer*, 511 U.S. at 832-33; *Hare*, 74 F.3d at 650. However, not every injury "by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.  "Prison officials are not . . . expected to prevent all inmate-on-inmate violence." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003) (citing *Farmer*, 511 U.S. at 834).  Instead, prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a known

substantial risk of serious harm. *Farmer*, 511 U.S. at 834; *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998). The plaintiff, therefore, must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were knowingly and deliberately indifferent to his safety or his need for protection. *Neals*, 59 F.3d at 533.

In this case, Jefferson conceded at the *Spears* Hearing that he made no effort at all to notify any of the tier guards or Deputy Vandenbroek that Allen had threatened him or had indicated an intent to fight with him. Instead, Jefferson stated that he laid in his bed planning preparations in case Allen started a fight. He wore tennis shoes to assure good balance and plotted his time in the cell before exiting to have his breakfast. In all of this planning, he admittedly failed to notify anyone that he had been in an on-going argument with Allen or that a fight could be imminent.

Consequently, none of the defendants, specifically Deputy Vandenbroek, had knowledge that Jefferson was or could be in danger and may have needed protection from Allen that morning. Once the officers recognized that the fight was occurring, the officers entered the room to stop it without having been asked to do so. Jefferson has not alleged that the defendants were intentionally indifferent to a known risk of harm. This claim must be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A, and 42 U.S.C. § 1997e.

**D.   Claim of Being Housed with a DOC Inmate**

Jefferson also complains that he was housed in the same area as Allen, whom he describes as a DOC or convicted inmate. Jefferson has not alleged that he was incarcerated under conditions posing a substantial risk of serious harm.

It is well settled that it not *per se* unconstitutional to house pretrial detainees and convicted inmates together.  The United States Fifth Circuit has stated that "[t]he confinement of pretrial detainees indiscriminately with convicted persons is unconstitutional unless such a practice is 'reasonably related to the institution's interest in maintaining jail security,' or physical facilities do not permit their separation." *Jones v. Diamond*, 636 F.2d 1364, 1374 (5th Cir. 1981), *overruled on other grounds*, *Int'l Woodworkers v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986).  Thus, the housing of pretrial detainees with convicted inmates may raise constitutional concerns, but only if their classification together is handled indiscriminately without justification. *Pembroke v. Wood County*, 981 F.2d 225, 229 (5th Cir. 1993); *Lathers v. Nelson Coleman Corr. Ctr.*, No. 10-128, 2010 WL 1489903, at *7-*8 (E.D. La. Mar. 22, 2010), *adopted by*, 2010 WL 1485468 (E.D. La. Apr. 13, 2010).  On the other hand, the Fifth Circuit also recognized in *Jones v. Diamond* that the housing of pretrial detainees with convicted inmates is permissible under some circumstances.

Significantly, the classification of inmates is an administrative function of the prison. *Jones v. Diamond*, 636 F.2d at 1376.  The federal courts give great deference to the administrative decisions of prison officials and will not interfere with legitimate administration without a constitutional violation. *See Bell*, 441 U.S. at 547-48; *Smith v. Bingham*, 914 F.2d 740, 742 (5th Cir. 1990).  "Inmates have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates." *Ricker v. Leapley*, 25 F.3d 1406, 1409 (8th Cir. 1994); *accord*, *Woods v. Edwards*, 51 F.3d 577, 582 (5th Cir. 1995) (citing *Hewitt v. Helms*, 459 U.S. 460, 469-70 (1983)); *Canterino v. Wilson*, 869 F.2d 948, 953 (6th Cir. 1989) (citing *Hewitt*, 459 U.S. at 472).

14

"Classification of inmates in Louisiana is a duty of the [custodian] and an inmate has no right to a particular classification under state law." *Woods*, 51 F.3d at 581-82 (quotation omitted).

For these reasons, "[i]nmates have no protectable property or liberty interest in custodial classification.  The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), *abrogated on other grounds*, *Booth v. Churner*, 532 U.S. 732, 735 (2001); *accord Wilkerson v. Stalder*, 329 F.3d 431, 436 (5th Cir. 2003); *Jones v. Roach*, 196 F. App'x 287, 288 (5th Cir. 2006).

Jefferson has not alleged that housing decisions at the St. Tammany Parish Jail were made indiscriminately without justification, or that the decisions were not reasonably related to the prison's interest in maintaining jail security.  The imposition of greater security measures as to particular pretrial detainees is warranted when an inmate has a long criminal record and history of violence. *See Jones v. Diamond*, 636 F.2d at 1374.  Jefferson indicated that his current incarceration was on charges of second degree murder, indicating that this was not his first incarceration.  He also indicated that he was involved in at least one other fight at the jail with another inmate.  In this instance, Jefferson engaged in an on going argument with Allen and made no effort to seek protection from this DOC inmate.  Instead, he voluntarily engaged in activities to prepare for the imminent physical encounter.  Jefferson's circumstances indicate that he too is a violent repeat offender who was housed among other volatile inmates of similar status.

Thus, the circumstances of this case do not point to a constitutional violation arising out of the circumstances of his housing. *See Julian v. Gusman*, No. 10-4671, 2011 WL 1399694, at *7

(E.D. La. Feb. 28, 2011), *adopted by*, 2011 WL 1399220, at *1 (E.D. La. Apr. 13, 2011).  This claim must be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A, and 42 U.S.C. § 1997e.

E.    **Claims of Excessive Force**

Jefferson alleges that Lieutenant Unbehagen and Deputy Trahan used excessive force against him by spraying mace and using the taser to stop the fight.  For a pretrial detainee to establish an excessive force claim, the inmate must establish that the force was not applied in a good-faith effort to maintain or restore discipline, but rather was applied maliciously and sadistically with the intention to cause harm.  *Hudson*, 503 U.S. at 7; *Edwards v. Loggins*, 476 F. App'x 325, 328 (5th Cir. 2012); *Noel v. Webre*, 426 F. App'x 247, 249-50 (5th Cir. 2011).  The courts can consider five nonexclusive factors in determining intent and whether an excessive force claim has been established: "(1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need for and the amount of the force used; (4) the threat reasonably perceived by the responsible officials; and (5) the efforts made to temper the severity of a forceful response."  *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998); *Williams v. Valenti*, 432 F. App'x 298, 301 (5th Cir. 2011); *Moss v. Brown*, 409 F. App'x 732 (5th Cir. 2010).

In assessing these factors, the Court must consider the wide-ranging deference given to the prison official in making quick and decisive decisions in a volatile situation.  *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993); *Baldwin*, 137 F.3d at 840.  In addition, although a showing of "significant injury" is not necessary, the Court may consider but not exclusively rely upon the absence of more than a *de minimis* injury in determining whether excessive force has occurred.  *See*

*Miles v. Staude*, 485 F. App'x 687, 688 (5th Cir. 2012); *Galada v. Payne*, 421 F. App'x 460, 462 (5th Cir. 2011) (citing *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001)).

In this instance, Jefferson was engaged in a fist fight with Allen when Lieutenant Unbehagen and Deputy Trahan entered the room and took efforts to stop the fight. Jefferson admittedly was still engaged in the fisticuff even after the officers entered the room. He admittedly continued in the fight even after feeling the mace spray on the back of his neck. Under the circumstances, the deputies used mace and the taser to stop Jefferson who at the time appeared to the officers to be the aggressor. By his own statements, he was on top of Allen on the table and when they fell to the floor as the officers entered the room. Considering Jefferson's complaint and statements, the officers used the force to restore order and discipline. The additional force was appropriate after the mere spraying of mace did not phase Jefferson or end the fight.

In addition, Jefferson did not indicate that he suffered any injuries as a result of the officers use of the mace or the taser. He received antibiotic ointment for the marks left by the taser pins and complained of no repercussions in that location. His other complaints about his ear were the result of injuries he received at the hands of Allen and not the officers. Jefferson also did not allege that his minor back and neck pain were caused by the officers rather than the fight. To the extent he does claim a relationship, his pain was fully relieved by the use of ibuprofen for two or three days. Such non-specific and temporary discomfort does not arise to more than a *de minimis* injury. *Gilliam v. McMillin*, No. 09cv99, 2012 WL 845185, at *2 (S.D. Miss. Mar. 12, 2012) (finding "vague statement as to injury is insufficient to surmount the *de minimis* hurdle."); *Burns v. Morgan*, No. H-05-4222, 2006 WL 237018, at *4 (S.D. Tex. Jan. 30, 2006) (head, neck and shoulder pain treated with ice pack and ibuprofen was not more than *de minimis* injury).

Considering these allegations and the relevant factors, Jefferson has not alleged a claim of excessive force under these circumstances. This claim must be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A, and 42 U.S.C. § 1997e.

## IV.   Recommendation

It is therefore **RECOMMENDED** that Jefferson's § 1983 claims against the defendants, Sheriff Rodney J. Strain, Jr., Warden Gregory Longino, Lieutenant Kelly Unbehagen, Deputy Travis Trahan, and Deputy Steve Vandenbroek, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant 28 U.S.C. § 1915(e), § 1915A, and 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[4]

New Orleans, Louisiana, this 22nd day of July, 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[4]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.